# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| JUAN GONZALEZ, | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 50023 |
| | ) | |
| v. | ) | |
| | ) | Judge Philip G. Reinhard |
| JOHN O'BRIEN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

For the following reasons, the court grants in part and denies in part the motion to dismiss [35] filed by defendants John O'Brien, John Crisham, and Wexford. The court grants in part the motion to dismiss [48] filed by defendants John Varga and John Baldwin. Defendants Dr. John Crisham and John Baldwin are dismissed as defendants. The court stays all pleading and discovery requirements for defendant Varga, named only in his official capacity for purposes of injunctive relief.

## STATEMENT-OPINION

This matter arises out of plaintiff Juan Gonzalez's amended complaint [20], in which he alleges that at all relevant times he was an inmate at Dixon Correctional Center, and defendants were deliberately indifferent to his medical needs when they repeatedly denied him dentures because he could not pay for them.

Before the court are two motions to dismiss. As an initial matter, defendants John Varga, Warden at Dixon Correctional Center, and John Baldwin, Medical Director for the IDOC ("the IDOC defendants"), have filed a motion to dismiss the claims against them, which include a claim for injunctive relief. *See* [48]; [49]. In the motion, the IDOC defendants argue that plaintiff has not stated a claim against them for any wrongdoing, including deliberate indifference; they also argue that defendant Baldwin is not an appropriate party to effectuate injunctive relief. *See id.* In plaintiff's response to the motion, he explains that he is not claiming wrongdoing by the IDOC defendants, and concedes that they were named only in their official capacities to effectuate injunctive relief in the event he is successful in this lawsuit; plaintiff has no objection to defendant Baldwin being dismissed in the event that defendant Varga is the proper party to effectuate injunctive relief. *See* [53]. In the IDOC defendants' reply, they do not appear

to oppose defendant Varga being named in this limited capacity, but ask that all pleading and discovery requirements be stayed. *See* [57]. The court agrees, dismisses defendant Baldwin, and stays all pleading and discovery requirements for defendant Varga at the present time.

Next, defendants John O'Brien, John Crisham, and Wexford have filed a joint Rule 12(b)(6) motion to dismiss all claims in plaintiff's amended complaint [20] directed against them. *See* [35]. Plaintiff has filed a response [54] and defendants have filed a reply [56]. The matter is now ripe for the court's review.

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *See Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Under federal notice pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013).

As noted, the amended complaint [20] claims that defendants John O'Brien, John Crisham, and Wexford were deliberately indifferent to plaintiff's medical needs by requiring payment before providing him with dentures. Dr. O'Brien argues that plaintiff's allegations are insufficient to state a claim for deliberate indifference. Dr. Crisham joins Dr. O'Brien's argument, but also argues that the claims against him are untimely. Wexford also joins Dr. O'Brien's argument and argues further that plaintiff has failed to adequately plead *Monell* liability. The court will analyze the claims against each defendant in turn. FN.

FN: The court also notes that defendants argue in their motion that the amended complaint contains redundant counts for Eighth Amendment violations in Counts I and III. Plaintiff points out in his response that the reference to Eighth Amendment violations in Count III was a scrivener's error because it alleges a Fourteenth Amendment equal protection violation. At this early stage, the court will allow both claims to proceed against Dr. O'Brien.

A. Dr. Crisham.

Dr. Crisham points out that the only time he is alleged to have examined plaintiff was on May 25, 2011. *See* [20] at ¶ 11. According to plaintiff, he "was still able to chew and swallow solid food" at that time, but "he was having some problems chewing food,

because of the locations of missing teeth." *Id*. Thus, "in order to make chewing easier, [plaintiff] asked Dr. Crisham if he could prepare dentures for him." *Id*. Dr. Crisham stated that he would prepare dentures for $170.00, but ultimately refused to prepare the dentures when plaintiff advised that he did not have $170.00 in his account. *See* [20] at ¶ 11-12.

Dr. Crisham argues that because plaintiff's amended complaint does not allege his personal involvement other than the May 25, 2011 incident, plaintiff's claims against him are untimely because plaintiff's complaint was filed in 2016. As an initial matter, the court notes that such an argument appears to have been foreclosed by the Seventh Circuit due to the doctrine of continuing violation when treatment is denied. *See Jervis v. Mitcheff*, 258 F. App'x 3, 5-6 (7th Cir. 2007) ("The statute of limitations commences anew every day that treatment is withheld, so in this case it does not matter whether [plaintiff] sued more than two years after he saw [the defendant physician] for the first and only time."); *Cesal v. Moats*, --- F.3d ----2017 WL 1046113, *5-6 (7th Cir. Mar. 20, 2017) ("When a plaintiff alleges that inaction is leading to an ongoing harm, he can reach back to its beginning . . . . [Plaintiff] was not required to sue until after the unlawful conduct ended. But [plaintiff] says it never ended while he was at [the prison]; he alleges that [the defendant physician's] deliberate indifference ended only on March 28, 2011, when [plaintiff] was transferred to [another prison] and thus out of [the defendant physician's] care.").

Regardless, the court agrees that Dr. Crisham limited involvement in plaintiff's care merits dismissal because plaintiff's allegations against Dr. Crisham are insufficient to state a claim for deliberate indifference to a serious medical need. In *Wynn v. Southward*, 251 F.3d 588 (7th Cir. 2001), the Seventh Circuit found that a plaintiff had demonstrated "a serious medical need for his dentures" where he alleged "that he has been unable to chew his food without his dentures, significantly impeding his ability to eat, and that he has suffered bleeding, headaches, and 'disfigurement.'" *Id*. at 593. Here, in contrast, plaintiff alleged that at the time he met with Dr. Crisham he could chew solid food but simply wanted dentures "in order to make chewing easier." *See* [20] at ¶ 11. Plaintiff does not allege, as he does regarding several later visits to Dr. O'Brien, that he complained to Dr. Crisham on May 25, 2011 of extreme pain or other related symptoms. Further, plaintiff does not allege that Dr. Crisham was personally involved in his treatment when his condition worsened and developed into a serious medical need for dentures. *See Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) ("[L]awsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim."). As such, plaintiff's allegations with regard to Dr. Crisham, even taken as true, do not nearly rise to what was considered a serious medical need in *Wynn*, and the court cannot find that they state a claim that Dr. Crisham's single denial on May 25, 2011 amounted to deliberate indifference to a serious medical need. The court thus grants defendants' motion to dismiss [35] with respect to Dr. Crisham.

B. Dr. O'Brien.

In contrast to plaintiff's limited allegations against Dr. Crisham, in his amended complaint plaintiff alleges that he repeatedly asked Dr. O'Brien for dentures over a series of medical visits and a steadily worsening medical condition. At various times, plaintiff alleges that he told Dr. O'Brien that "he could not properly chew without causing substantial pain" and that biting "caused several of his teeth to grind directly into [his] gums." [20] at ¶ 21. He also advised Dr. O'Brien that he had begun experiencing GERD symptoms due to his inability to chew and that "[t]he pain in his teeth and gums was increasing and causing substantial pain, he was unable to eat most solid foods and he was continuing to lose weight." *See* [20] at ¶¶ 23, 26. Finally, plaintiff complained to his prison counselor, who relayed the complaints to Dr. O'Brien, that he needed dentures because "he was unable to chew food because of missing teeth, that it was very painful when he did attempt to eat and that his inability to normally consume food was causing him to lose weight and generally feel infirm." *See* [20] at ¶¶ 24-25. As noted above, the Seventh Circuit has held that these symptoms constitute a serious medical injury. *See Wynn v. Southward*, 251 F.3d at 593.

Plaintiff alleges that each time he requested dentures from Dr. O'Brien, Dr. O'Brien refused to provide them because plaintiff "had insufficient funds in [his] account." *See* [20] at ¶ 26. Plaintiff alleges that after his counselor discussed his request for dentures to Dr. O'Brien and investigated the issue, the upshot was that the counselor wrote plaintiff a letter explaining that the cost of dentures had gone up since 2011 and would now cost $250.00 for partials or $450.00 for a full set of upper and lower dentures. *See* [20] at ¶ 25. Plaintiff alleges that he "does not have sufficient funds to pay the amount demanded for the dental care that he needs to alleviate his extreme pain in his teeth and gums to allow him to properly eat and chew." [20] at ¶ 37. Construing the allegations in the manner most favorable to plaintiff, as the court is required to do at this stage, it appears clear that Dr. O'Brien required pre-payment for the dentures before he would agree to make them for plaintiff, despite knowing that plaintiff did not have the funds to do so.

Defendants cite *Poole v. Isaacs*, 703 F.3d 1024 (7th Cir. 2012) and *Hightower v. Godinez*, 524 F. App'x. 294 (7th Cir. 2013) for the proposition that prisons are constitutionally allowed to charge inmates for medical services, and that to the extent plaintiff claims a statutory exemption for indigence, "that is a question of state law, which cannot form the basis for a § 1983 claim." *See Hightower*, 524 F. App'x. at 296 (citing *Poole*, 703 F.3d at 1027). However, defendants misread *Poole* and *Hightower*. In both cases, the Seventh Circuit explicitly limited its general holdings to "inmates who are able to contribute to the cost of their care." *Poole*, 703 F.3d at 1026; *see also Hightower*, 524 F. App'x. at 296 ("[I]t is not deliberate indifference for prison medical professionals to insist that inmates *who are financially able* tender a required co-payment before receiving care.") (emphasis added). The court in *Poole* noted that the United States Supreme Court has held that "*as long as the governmental entity ensures that the medical care needed is in fact provided*, the Constitution does not dictate how the cost of that care should be allocated as between the entity and the provider of the care." *Poole*, 703 F.3d

at 1027 (quoting *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 245 (1983) (emphasis added)).

While the court has not discovered Seventh Circuit cases directly analogous to the instant case, lower courts in this Circuit have found that conditioning medically necessary treatment on prepayment violates the Eighth Amendment. *See Foy v. Bantry Group*, 2016 WL 5107096, at *2 (C.D. Ill. 2016) ("Inmates may be charged for medical treatment so long as that medical treatment is not withheld pending payment. Withholding treatment for want of payment is a violation of an inmate's constitutional rights.") (collecting cases). In fact, another complaint alleging substantially similar allegations is currently pending against Dr. O'Brien in the Northern District Western Division and has survived initial review on this basis. *See Carter v. O'Brien*, 2016 WL 2766303 (N.D. Ill. 2016) (Kapala, J.) ("Plaintiff has sufficiently alleged deliberate indifference by . . . Dr. John O'Brien. . . . Plaintiff alleges that Dr. O'Brien refused his request for allegedly medically-necessary partial dentures to allow him to chew and avoid ongoing pain without Plaintiff prepaying for them, despite knowing that Plaintiff lacked the funds to do so.").

These lower court findings are bolstered by persuasive authority from other jurisdictions. The court in *Weeks v. Hodges*, 871 F.Supp.2d 811 (N.D. Ind. 2012) collected cases from a number of other circuits:

> [A] prison official that conditions medical treatment on a prisoner's ability to pay may be deliberately indifferent. *Martin v. Debruyn*, 880 F. Supp. 610, 615 (N.D. Ind. 1995) ("A prison official who withholds necessary medical care, for want of payment, from an inmate who could not pay would violate the inmate's constitutional rights if the inmate's medical needs were serious ...."), *aff'd*, No. 96–2833, 1997 WL 295303 (7th Cir. 1997); *see also Cannon v. Mason*, 340 Fed.Appx. 495, 499 n. 3 (10th Cir. 2009) ("[A]n Eighth Amendment violation concerning medical charges only occurs if prison officials deny an inmate medical treatment due to a lack of funds or condition the provision of needed medical services upon an inmate's ability to pay ...."); *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) ("[Prison officials may not] condition provision of needed medical services on the inmate's ability or willingness to pay."); *Ancata v. Prison Health Servs. Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) ("Delay in medical treatment cannot be justified as a means to coerce payment.").

*Id*. at 821-22.

As the weight of this authority makes clear, plaintiff has properly alleged a claim of deliberate indifference to serious medical needs against Dr. O'Brien. Defendants' motion to dismiss [35] is thus denied with respect to Dr. O'Brien.

C. Wexford.

Finally, plaintiff alleges that Wexford is liable for his injuries because "Wexford maintains an unconstitutional policy and adopts a custom of deliberate indifference to the known or obvious consequences of its practices," that "Wexford has and enforces a corporate policy that sanctions the maintenance of prison conditions, including the refusal to provide required medical and dental care to prisoners, that infringes on the constitutional rights of inmates," and that "[t]his policy has caused [plaintiff] to go without dentures and the necessary medical care for more than four years." *See* [20] at ¶¶ 40-42.

Defendants argue that plaintiff has failed to plead *Monell* liability because his allegations are conclusory and that plaintiff "relies solely upon his own experiences" to support his claims. *See* [35] at 6. Further, defendants point out that plaintiff alleges in his complaint that "there are other inmates who, under the same circumstances as Mr. Gonzalez, were provided with either full or partial dentures at no charge to the inmate." *See* [20] at ¶ 49. Given these factual allegations, defendants argue that "[i]t is implausible to conclude that Wexford maintains an unconstitutional policy or practice of denying inmates free dentures when Plaintiff actually alleges that other inmates receive dentures free of cost." *See* [35] at 6.

In response, plaintiff points to another case filed with this court to attempt to establish a widespread practice. Defendants argue, and this court agrees, that it would be improper for the court to consider matters outside the pleadings at this stage. Plaintiff also alleges that his equal protection allegations and deliberate indifference allegations are simply pleading in the alternative. But as defendants point out, pleading in the alternative does not entitle plaintiff to rely on different facts for different claims. *See Weddle v. Smith & Nephew, Inc.*, 2016 WL 1407634, at *4 (N.D. Ill. 2016) ("In any event, that a party may assert inconsistent claims or defenses does not license disregard of the requisite pleading standards. Inconsistency does not doom a claim, but implausibility does.") (collecting cases). Pleading facts that render one claim implausible may doom that claim. *See id.* at *5 (plaintiff "appears to have pleaded facts that dictate dismissal of its claim . . . . *See Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (a party may plead herself out of court by pleading facts that show she has no legal claim)).

The court agrees with defendants that plaintiff's allegations regarding a widespread practice are conclusory and unsupported with factual allegations; in fact, the only factual allegation appears to go in the other direction, as plaintiff's only allegations regarding other inmates state that other inmates have received free dentures. On the other hand, construing all allegations in the manner most favorable to plaintiff, including plaintiff's specific allegations regarding the cost of dentures relayed by different individuals in the prison system, the court finds that plaintiff has adequately stated a claim that the individual defendants were following an express policy from Wexford that inmates at Dixon would have to prepay for dentures. Plaintiff's allegations regarding other inmates do not necessarily render the existence of such a policy implausible, but are

consistent with exceptions to the rule. The court notes that this case is in its early stages, and whether plaintiff's allegations that Wexford had such a policy will be a matter better resolved after factual development at summary judgment. As such, defendants' motion to dismiss [35] with regard to Wexford is denied at this time.

　　　As soon as most facts are available through discovery, the parties are directed to have an early settlement conference with Magistrate Judge Johnston.

Date: 3/30/2017　　　　　　　　　　　　　ENTER:


_____
　　　　　United States District Court Judge


Electronic Notices. (LC)